IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **KRYSTAL LOCKETT, et al.,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 19-00358-CV-W-GAF |
| | ) |
| **PINNACLE ENTERTAINMENT,** | ) |
| **INC., et al.,** | ) |
| | ) |
| Defendants. | ) |

## ORDER

Now before the Court is Plaintiffs'[1] Motion for FLSA[2] Conditional and Rule 23 Class Certification. (Doc. # 132). Defendants[3] oppose. (Doc. # 147). Upon consideration of all the briefing[4] and for the following reasons, Plaintiffs' Motion is GRANTED in part and DENIED in part.

---

[1] Krystal Lockett; Amber L. Caswell; Jacqueline Davis; David C. Devun, Jr.; Tabatha K. Dozier; Seth B. Istre; Racal Johnson; Cynthia J. Kofron; Tonisha S. Lonzo; Nathan J. McDermott; Jeremy Mitchell; Laura Perez; Wayne Sheffield; and Jamaica S. Young.

[2] Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*

[3] Pinnacle Entertainment, Inc.; Ameristar Casino Council Bluffs, LLC d/b/a Ameristar Council Bluffs; Ameristar Casino East Chicago, LLC d/b/a Ameristar East Chicago; Cactus Pete's LLC d/b/a Cactus Pete's Resort Casino; Louisiana-I Gaming d/b/a Boomtown New Orleans; PNK (Baton Rouge) Partnership d/b/a L'Auberge Baton Rouge; PNK (Bossier City), L.L.C. d/b/a Boomtown Bossier City; PNK (Lake Charles), L.L.C. d/b/a L'Auberge Lake Charles; PNK (River City), LLC d/b/a River City; PNK Vicksburg, LLC d/b/a Ameristar Vicksburg; and Washington Trotting Association, LLC d/b/a The Meadows.

[4] Also pending is Defendants' Motion for Leave to File Surreply (Doc. # 157), which Plaintiffs oppose. (Doc. # 158). Upon consideration of the parties' arguments, the Court GRANTS the Motion, deems the Surreply (Doc. # 157-1) filed, and has considered the arguments contained therein in reaching this decision.

**DISCUSSION**

**I. BACKGROUND**

Defendant Pinnacle Entertainment, Inc. ("Pinnacle") is a gaming entertainment company that owns and operates casinos in, as relevant here: Indiana, Iowa, Louisiana, Mississippi, Missouri, Nevada, and Pennsylvania. (Doc. # 46 ("FAC"), ¶¶ 28-38; Doc. # 59 ("Mo. Def. Ans."), ¶¶ 28-38; Doc. # 97 ("F.S. Def. Ans."), ¶¶ 28-38). Pinnacle is the parent company of the other ten defendants, which are referred to collectively as the "Subsidiary Defendants."[5] (*Id.*). The Subsidiary Defendants own and operate casinos in the seven states. (*Id.*).

At relevant times, Pinnacle and at least one of the Subsidiary Defendants allegedly jointly employed each of Plaintiffs as a table games dealer, a non-exempt, hourly position. (FAC, ¶¶ 14-27, 39). Approximately 3,000 others have been similarly employed during the relevant time period. (Docs. ## 147-1 through 147-10, ¶ 6). Plaintiffs allege Defendants required them and other similarly situated table games dealers to participate in illegal tip pools (FAC, ¶¶ 42-57) and improperly deducted gaming license fees from their paychecks, which reduced their compensation below the required minimum wage. (*Id.* at ¶¶ 58-79). Plaintiffs' First Cause of Action is a claim regarding the tip pools. (*Id.* at ¶¶ 108-14). The remaining Causes of Action concern the gaming license fee deductions. (*Id.* at ¶¶ 115-55).

This Court previously denied Defendants' Motion to Dismiss the gaming license fee deduction claims. *See Lockett v. Pinnacle Entertainment, Inc.*, 408 F. Supp. 3d 1043 (W.D. Mo. 2019). The parties have since stipulated to conditionally certifying Plaintiffs' FLSA Gaming License Policy Collective and certifying the following Rule 23 classes: (a) Missouri Minimum Wage Law – Minimum Wage Rule 23 Class (River City); (b) Iowa Wage Payment Collective Law

---

[5] Each Subsidiary Defendant will be referred to as its d/b/a name when discussed individually.

2

– Minimum Wage Rule 23 Class (Ameristar Council Bluffs); and (c) Iowa Wage Payment Law – Unlawful Deduction Rule 23 Class (Ameristar Council Bluffs). (Doc. # 133-1). However, disputes remain regarding whether conditional certification of Plaintiffs' FLSA Unlawful Tip Pool Collective should be approved.

**A. Table Games Department Tip Pool Policy**

Each Subsidiary Casino has a Table Games Department in which they employ several positions, including positions that can be categorized generally as dealers, supervisors, and dual-rate.[6] (Doc. # 133-3, pp. 8, 20, 31, 43, 53, 63, 74, 85, 96, 107; Docs. ## 133-5, 133-6, 133-8). Dealers are non-exempt, "tipped employees" whose base hourly wage is often less than the applicable minimum wage. (Doc. # 133-8, pp. 6, 13, 20, 27, 34, 42, 49, 56, 63, 70). To comply with minimum wage laws, Defendants claim a "tip credit" to account for this difference. (Doc. # 135-2, pp. 2-3; Doc. # 135-3). However, dealers are not permitted to retain their tips (also referred to as "tokes"). (Doc. # 135-2, p. 3). Instead, dealers must participate in tip pools in which tips are collected, pooled, and distributed based on pre-defined rules. (*Id.*; Doc. # 133-3, pp. 7-9, 20-21, 31-32, 43-44, 53, 63-64, 74-75, 85-86, 96-97, 107-08; Doc. # 133-8, pp. 7, 14, 21, 28, 35, 43, 50, 57, 64, 71; Doc. # 135-3, p. 4; Doc. # 135-3, p. 4).

The tip pools' rules are generally recorded in a document, sometimes labeled as "by-laws" or "policies," and vary between the Subsidiary Defendants' casinos; each casino's own dealers—not Defendants—determine how tips are pooled and distributed. (Docs. ## 147-26 through 147-34 and 150-1, ¶ 1; Docs. ## 150-2 through 150-16). However, Ameristar East Chicago requires that its "house" policies supersede any tip pool rules "at all times" when the two are in conflict

---

[6] The exact title of each position at issue varies across the Subsidiary Defendants but generally falls within one of these categories. (Doc. # 133-3, pp. 8, 20, 31, 43, 53, 63, 74, 85, 96, 107).

3

and that the rules must be amended to reflect any changes to its, or Pinnacle's, rules and regulations. (Doc. # 150-3, pp. 6, 13; Doc. # 150-4, pp. 6, 13). Ameristar Council Bluffs and River City require the dealers to seek approval from their Vice Presidents of Casino Operations and Directors of Human Resources before amending the tip pool rules. (Doc. # 150-2, p.2; Doc. # 150-3, p. 1).

Participation in the tip pools is limited to employees who work as dealers. (Doc. # 133-3, pp. 9, 20-21, 31-32, 43-44, 53, 63-64, 74-75, 85-86, 96-97, 107-08). As such, individuals that work exclusively in a supervisor position—a non-tipped position—do not receive any tips from the tip pools. (*Id.*; Doc. # 133-8, pp. 7-9, 14-16, 21-22, 28-30, 35-37, 43-44, 50-52, 57-59, 64-65, 71-73). However, some employees work in both positions; that is, the employee is sometimes assigned to work as a dealer and other times assigned to work as a supervisor. (Doc. # 133-8, pp. 9, 16, 23, 30, 37, 45, 52, 59, 65-66, 73). Those individuals are dual-rate employees. (*Id.*). Dual-rate employees are paid one rate when working in the dealer position and a different rate when working as a supervisor. (Doc. # 133-3, pp. 9, 21, 32, 44, 54, 64, 75, 86, 97, 108). For the hours working as a dealer, dual-rate employees also receive allocated tips from the tip pools. (*Id.* at pp. 9, 20-21, 31-32, 43-44, 53, 63-64, 74-75, 85-86, 96-97, 107-08). Dual-rate employees do not receive tips for hours working as a supervisor. (*Id.*; Doc. # 133-8, pp. 7-9, 14-16, 21-22, 28-30, 35-37, 43-44, 50-52, 57-59, 64-65, 71-73).

**B.     Paid Time Off Policy**

Defendants offer paid time off ("PTO") as a benefit to hourly, non-exempt employees. (Doc. # 135-5). PTO accrues based on each individual hour worked at a rate determined by the employee's length of service. (*Id.* at p. 4). When used, PTO is paid at the employee's "primary position" rate of pay. (Doc. # 135-1, p. 28). Thus, a dealer is paid at his or her base hourly rate

4

plus the allocated share of the pooled tips for each PTO hour taken, and a supervisor is paid only his or her base rate of pay for PTO with no tips. Dual-rate employees, on the other hand, have two rates of pay: one when working as a dealer and another when working as a supervisor. (Doc. # 133-3, pp. 9, 21, 32, 44, 54, 64, 75, 86, 97, 108).

To pay dual-rate employees the appropriate wages, Defendants track when dual-rate employees work as a dealer versus when they work as a supervisor. (*Id.*). However, Defendants do not maintain such records for PTO purposes. (Doc. # 133-3, pp. 11, 23, 34-35, 45-46, 55-56, 66, 77, 88-89, 99, 110-11). Instead, Defendants calculate the number of PTO hours a dual-rate employee has earned in one "bucket," without delineating in which role those hours accrued. (*Id.*).

Because dual-rate employees' PTO is kept in one bucket, two question arise: (1) whether the PTO should be paid out at the dealer rate or the supervisor rate when taken and (2) whether the dual-rate employee is entitled to a share of the tip pool for the PTO? Regarding the second question, the tip pool rules should govern whether a dual-rate employee receives a share of the tips for PTO. The respective tip pool rules of Ameristar Council Bluffs, Ameristar East Chicago, Cactus Pete's, and River City specify that dual-rate employees taking PTO leave are entitled to tips only for PTO earned while working as a dealer. (*See* Docs. ## 150-2, 150-3, 150-5, 150-14). The tip pool rules of Boomtown New Orleans, L'Auberge Baton Rouge, Boomtown Bossier City, L'Auberge Lake Charles, Ameristar Vicksburg, and the Meadows are silent regarding whether dual-rate employees are entitled to tips for PTO. (*See* Docs. ## 150-6 through 150-13, 150-15, 150-16).

Regarding the first question, the Subsidiary Defendants have varying policies to determine whether the PTO is paid at the dealer rate, the supervisor rate, or some combination of both rates when a dual-rate employee utilizes PTO. (*Id.* at pp. 9-11, 21-23, 32-34, 44-45, 54-55, 64-66, 75-

5

77, 86-88, 97-98, 108-10). For example, at L'Auberge Baton Rouge, if the dual-rate employee spent the majority of his or her hours during the prior pay period working as a dealer, all PTO pay would be paid at the dealer rate. (Doc. # 133-3 pp. 76-77). Boomtown New Orleans and Boomtown Bossier City pay dual-rate employees at the dealer rate for all PTO taken even if the PTO was earned while working in a supervisor role. (*Id.* at pp. 45, 54-55). The Meadows followed a similar policy until January 11, 2018 and now pays dual-rate employees a percentage of the PTO taken at the dealer rate based on the proportion of time the employee worked in the dealer position over the previous quarter with the remaining proportion paid at the supervisor rate. (*Id.* at pp. 109-10). The remaining Subsidiary Defendants maintain a percentage policy and determine the percentage of PTO paid at the dealer rate in proportion to the amount of time worked in the dealer position during some specified time period. (*Id.* at pp. 10-11 (Ameristar Council Bluffs), 22-23 (Ameristar East Chicago), 33-34 (Ameristar Vicksburg), 65-66 (Cactus Pete's), 87-88 (L'Auberge Lake Charles), 98 (River City)).

## II. FLSA STANDARD

The purpose of the FLSA is to eliminate unfair labor practices by barring "customs and contracts which allow an employer to claim all of an employee's time, while compensating him for only part of it." *Tenn. Coal Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 602 (1944); 29 U.S.C. § 201 *et seq.* Section 206 of the FLSA requires employers to pay employees a regular hourly rate of at least $7.25. 29 U.S.C. § 206(a). Section 203(m) carves out an exception to the minimum wage, allowing an employer to take a "tip credit"[7] under certain conditions. 29

---

[7] "The FLSA allows employers to pay a minimum cash wage of $2.13 per hour to employees in a 'tipped occupation' as long as the employee's tips make up the difference between the $2.13 hourly cash wage and the current federal minimum wage, presently $7.25 per hour." *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 874-75 (8th Cir. 2011). The difference between the $2.13 per hour and the minimum wage is referred to as a "tip credit." *Id.*

6

U.S.C. § 203(m)(2)(A); 29 C.F.R. § 531.59. Section 203(m) also provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). The FLSA creates a private right of action to recover damages for violations of the Act's wage provisions. 29 U.S.C. § 216(b).

Plaintiffs seek to collectively pursue their claims against Defendants pursuant to 216(b), which provides:

> An action to recover the liability prescribed in [§ 203(m)(2)(B)] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus, a collective action under the FLSA differs from a Rule 23 class action where potential plaintiffs are included in a class if they fail to "opt-out" in that plaintiffs in a collective action must "opt-in" to participate. *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007); *McClean v. Health Sys, Inc.*, No. 11-03037-CV-W-DGK, 2011 WL 6153091, at *3 (W.D. Mo. Dec. 12, 2011).

"Federal courts have used varying standards to determine whether potential opt-in plaintiffs are 'similarly situated' under § 216(b)." *Kautsch*, 504 F. Supp. 2d at 688. Although the Eighth Circuit has not yet indicated which standard should apply, district courts in this Circuit have used a two-stage certification process: (1) the conditional certification or notice stage and (2) the opt-in or merits stage. *Stagner v. Hulcher Servs., Inc.*, No. 16-1036-CV-W-FJG, 2017 WL 3166841, at *2 (W.D. Mo. July 25, 2017); *Kautsch*, 504 F. Supp. 2d at 688; *Davis v. Nova Star Mortg., Inc.*, 408 F. Supp. 2d 811, 814-15 (W.D. Mo. 2005). The notice stage occurs early in the litigation. *McClean*, 2011 WL 6153091 at *3. "At the early stage, the court does not consider the merits of

7

the plaintiff's claims, and a plaintiff can essentially sustain its burden by pleading that 'the putative class members were together the victims of a single decision, policy or plan . . . .'" *McClean*, 2011 WL 6153091 at *3 (quoting *Kautsch*, 504 F. Supp. 2d at 688). "Once the Court conditionally certifies the class, potential class members are given notice and the opportunity to 'opt-in.'" *Kautsch*, 504 F. Supp. 2d at 688. "At the second step of the process, the defendant may move to decertify the class. This is typically done after the close of discovery when the Court has much more information and is able to make a more informed decision." *Id.* This second stage "requires a heightened standard of review to determine whether plaintiffs are similarly situated such that the lawsuit can proceed." *McClean*, 2011 WL 6153091 at *3.

Because the notice stage is typically based on little or no discovery, the burden on plaintiffs is not stringent and courts generally utilize a lenient evaluation standard. *Chapman v. Hy-Vee, Inc.*, No. 10-CV-6128-W-HFS, 2012 WL 1067736, at *2 (W.D. Mo. Mar. 29, 2012). The standard is not invisible though. *Settles v. Gen. Electric*, No. 12-00602-CV-W-BP, 2013 WL 12143084, at *2 (W.D. Mo. Feb. 19, 2013); *Adams v. Hy–Vee, Inc.*, No. 11–00449–CV–W–DW, 2012 U.S. Dist. LEXIS 98590, *10 (W.D. Mo. May 22, 2012). "[P]laintiffs must present more than mere allegations[.] . . . [S]ome evidence to support the allegations is required." *Young v. Cerner Corp.*, 503 F. Supp. 2d 1226, 1229 (W.D. Mo. 2007). "Unsupported assertions or those not based on personal knowledge will not show that the plaintiffs are similarly situated for conditional certification." *Settles*, 2013 WL 12143084, at *2.

However, where the parties have engaged in substantial discovery, some courts have used an "intermediate standard," which requires a court to compare the allegations in the complaint with evidence presented to determine whether plaintiffs have made a sufficient showing beyond their original allegations. *See McClean*, 2011 WL 6153091, at *5; *Sutton-Price v. Daugherty Sys., Inc.*,

8

No. 4:11-CV-1943 (CEJ), 2013 WL 3324364, at *4 (E.D. Mo. July 1, 2013). Such standard requires "the plaintiffs to demonstrate at least 'modest' factual support for the class allegations in their complaint." *Sutton-Price*, 2013 WL 3324364, at *3. This is particularly true where the parties have engaged in discovery on the issue of whether or not the action should proceed as a collective action. *See id.*; *McClean*, 2011 WL 6153091, at *5; *Kayser v. Sw. Bell Tel. Co.*, 912 F. Supp. 2d 803, 812 (E.D. Mo. 2012); *Creely v. HCR ManorCare, Inc.*, 789 F. Supp. 2d 819, 823–27 (N.D. Ohio 2011); *Pacheco v. Boar's Head Provisions Co., Inc.*, 671 F. Supp. 2d 957, 960 (W.D. Mich. 2009). While some courts have applied an intermediate standard in cases where substantial discovery has occurred, others have continued to apply the lenient standard despite the evidence generated during discovery. *See, e.g., Speer v. Cerner Corp.*, No. 14-0204-CV-W-FJG, 2016 WL 1267809 (W.D. Mo. Mar. 30, 2016); *Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 2:10-CV-04175-NKL, 2011 WL 3794021 (W.D. Mo. Aug. 25, 2011), *class decertified* 2013 WL 12153518 (W.D. Mo. July 8, 2013); *Polzin v. Schreiber Foods Inc.*, No. 10-1117-CV-SW-GAF, slip op. (W.D. Mo. Aug. 15, 2011).

Here, the parties have engaged in discovery directly related to the issue of conditional certification. Approximately 4,000 pages of documents have been exchanged and 12 of the named Plaintiffs have been deposed. However, no Rule 30(b)(6) depositions have been conducted. Although Plaintiffs' counsel has been involved in related cases (*Allen v. Pinnacle Entertainment, Inc.*, No. 17-00374-CV-W-GAF; *Astarita v. Pinnacle Entertainment, Inc.*, No. 15-00095-CV-W-GAF) against Pinnacle and some of its subsidiaries, Plaintiffs do not rely on any of the discovery produced in those prior cases to support conditional certification. (*See* Docs. ## 133, 152). The discovery in the present case is not nearly as extensive as what had occurred in *Allen* at the conditional certification stage. (*See Allen*, Doc. # 150, p. 12). Under the circumstances of this

9

case, the Court believes the lenient standard is appropriate.

## III. ANALYSIS

### A. Unlawful Tip Pool Claim

Plaintiffs seek conditional certification of collective for an alleged unlawful tip pooling arrangement. (Doc. # 132). The employer bears to burden of establishing it is entitled to a tip credit, which includes the burden to prove it operated a legal tip pool. *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 189 (5th Cir. 2015) (citing *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011)); *see also Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549 n.4 (6th Cir. 1999) ("[A]n employer who invokes a statutory exemption from minimum wage liability bears the burden of proving its qualification for that exemption."). To take a tip credit in accordance with the FLSA, an employer must ensure all tips received by an employee are retained by that employee. 29 U.S.C. § 203(m)(2)(A). However, there is an exception: the FLSA does not "prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.*

Additionally, the FLSA prohibits employers from keeping tips received by its employees or allowing managers or supervisors to take any portion of employees' tips. 29 U.S.C. § 203(m)(2)(B). If the employer requires employees whose positions do not customarily and regularly receive tips be included in the tip pool, then the employer has interfered with the employees' right to retain their tips and has potentially allowed a prohibited person to keep a portion of the tips. *See Montano*, 800 F.3d at 189-90. If a tip pooling arrangement violates the FLSA's requirements, the employer is ineligible to claim the tip credit, is liable for the difference between its tipped employees' sub-minimum direct cash wage ($2.13) and the federal minimum wage ($7.25), and must reimburse all improperly retained/distributed tips. *See id.* at 189 (employer may not legally take a tip credit if it requires non-tipped employees be included in tip pool); 29

U.S.C. § 216(b) (establishing damages for violations of §§ 206 and 203(m)(2)(B)).

Plaintiffs concede Defendants have complied with the FLSA with respect to employees working exclusively as dealers or exclusively as supervisors for purposes of pay and PTO. (Doc. # 133, pp. 18-19, 21-23). Plaintiffs also acknowledge that Defendants have complied with § 203(m)(2)(B) when compensating for actual hours worked by dual-rate employees because hours worked by dual-rate employees in their supervisory capacity are not included in the tip pooling arrangement. (*Id.* at pp. 20-21). Plaintiffs argue, however, that Defendants' application of the PTO policy to the mandatory tip pools results in a violation because the tip pools include dual-rate employees. (*Id.* at p. 21). Specifically, Plaintiffs contend Defendants' failure to distinguish between PTO accrued during hours worked as a dealer (hereinafter "dealer PTO") versus PTO accrued during hours worked as a supervisor (hereinafter "supervisor PTO") results in Defendants paying dual-rate employees' supervisor PTO at the dealer rate plus tips from the tip pool.[8] (*Id.* at pp. 23-28). Plaintiffs argue this practice violates § 203(m)(2) for three independent and alternative reasons: (1) Defendants have failed to limit participation in the dealers' tip pools to "employees who customarily and regularly receive tips"; (2) Defendants are keeping and using tips to pay for a benefit accrued by an employee working in a supervisor capacity; and (3) dual-rate employees, when working as a supervisor, are "managers" or "supervisors" and are keeping a portion of employees' tips in violation of § 203(m)(2)(B). (*Id.*; Doc. # 152, pp. 20-21).

Plaintiffs seek conditional certification of a collective consisting of "[a]ll persons employed as a table games dealer and included within a tip pooling arrangement at a relevant Pinnacle casino during the relevant time period." (Doc. # 133, p. 14). Plaintiff defines "relevant Pinnacle casino"

---

[8] Plaintiffs do not argue that Defendants' practice of paying dual-rate employee's dealer PTO at the dealer rate plus tips from the tip pool violates this provision. (Doc. # 133, pp. 18-19).

11

as the ten casinos operated by each of the Defendant Subsidiaries and Pinnacle and "relevant time period" as "from up to February 21, 2016 to the present." (*Id.* at pp. 14-15). Alternatively, Plaintiffs seek conditional certification of a global collective comprised of separate sub-classes for each of the Defendant Subsidiaries. (Doc. # 152, p. 16).

The evidence indicates Defendants are paying dual-rate employees' supervisor PTO, in part, with tips from tip pools at L'Auberge Baton Rouge, Boomtown New Orleans, Boomtown Bossier City, and, until January 11, 2018, at the Meadows. The evidence also indicates Defendants may be paying supervisor PTO, in part, with tips from the tip pools at the other casinos operated by Pinnacle and the Subsidiary Defendants. Thus, it appears Plaintiffs have produced some evidentiary support for their allegations and conditional certification could be appropriate.

However, Defendants argue the Court should not conditionally certify the proposed collective because (a) Plaintiffs have not shown there is a single, unlawful decision, policy, or plan applicable to all putative collective members; (b) resolution of the merits require individualized inquiries; (c) the FLSA does not regulate PTO or the dealers' decisions regarding tip distribution; (d) the collective definition is too vague; and (e) there is an inherent conflict of interest within the putative collective as defined. (Doc. # 147, p. 24). Regarding Plaintiffs' proposed alternative conditional certification, Defendants argue sub-classes would be unmanageable and do not cure other issues with the proposed collective. (Doc. # 157-1, pp. 5-8). Defendants' first three arguments go to the merits of Plaintiffs' collective claim and the remaining arguments relate to the composition of the collective.

### 1. *Merits of Collective Claim*

Defendants argue dealers are free to structure their tip pools however they would like and that dealers actually do structure them differently as evidenced by the distinct bylaws and policies

12

governing tip pools at the separate casinos. (Doc. # 147, pp. 24-29). Although tipped employees are free to share tips with any co-worker they please (including non-tipped employees), the decision to pool and share tips must be "free from any coercion whatever and outside of any formalized arrangement or as a condition of employment." Dep't of Labor, Field Operations Handbook § 30d04(g) (2016), https://www.dol.gov/agencies/whd/field-operations-handbook (follow "Chapter 30" hyperlink); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 230 (5th Cir. 2011).

Defendants require dealers to participate in the tip pools, indicating that participation is a condition of employment. The record reflects dealers did not voluntarily decide to pool their tips and any changes to a tip pool's bylaws and policies are subject to managerial approval. Likewise, management has an active role in ratifying distribution methods of pooled tips for dual-rate employees' PTO pay. At least two Subsidiary Defendants, River City and Ameristar Council Bluffs, require the Vice President of Casino Operations and the Director of Human Resources to approve any changes to the toke policy and one other Subsidiary Defendant, Ameristar East Chicago, explicitly states that its policies supersede toke policies "at all times" when in conflict. Consequently, dealers' decisions regarding their tip distribution is not entirely voluntary and is susceptible to some level of coercion.

As Plaintiffs succinctly note, Defendants chose to require dealer participation in a mandatory tip pool and chose to rely on distribution of tips from that tip pool to make up the difference between their dealers' subminimum base hourly wage and the federal minimum wage. (Doc. # 152, p. 13). Defendants, not their employees, were obligated to ensure (1) that participation in the mandatory tip pool was limited to "employees who customarily and regularly receive tips" and (2) that Defendants did not (a) "keep tips received by its employees for any

13

purposes" and (b) allow "managers and supervisors to keep any portion of employees' tips." 29 U.S.C. § 203(m)(2). Plaintiffs have presented sufficient evidence at this stage to show Defendants have a common policy that allegedly resulted in the use of dealers' pooled tips to pay for dual-rate employees' PTO hours earned while working in a supervisor capacity. Any difference between the Defendant Subsidiaries handling of this common policy could be addressed with the use of sub-collectives for the reasons outlined in Plaintiffs' reply brief (Doc. # 152, pp. 14-16).

Defendants argue the Court's decision to deny Rule 23 class certification in *Allen* should guide its decision on the present motion for FLSA conditional certification. (Doc. # 147, pp. 20-21, 26-28). The Court disagrees. "Rule 23 follows much different standards than an examination of whether a collective action should be conditionally certified under the FLSA." *Davis*, 408 F. Supp. 2d at 818. And even if that were not true, the facts of the present case are distinguishable from those in *Allen.* In *Allen*, the proposed Rule 23 class included every hourly employee who participated in a tip pool across three separate casinos, each housing at least 20 different departments. (*Allen*, Doc. # 170, pp. 2-3). The four named plaintiffs worked at only two of the casinos and in just one of the 20-plus departments. (*Id.*). The class was so broadly defined as to include tip pools with both written and unwritten rules, as well as pools using tip jars and pools with a "tip out" practice. (*Id.* at pp. 16-17). The Court noted that "[t]here are simply no common questions, let alone answers, here given the plethora of tip pools across the three . . . casinos." (*Id.* at p. 17). Consequently, the *Allen* plaintiffs had not satisfied the Rule 23 "commonality" requirement. (*Id.*).

By contrast, the proposed collective in the present case is narrowly defined to include only persons working dealers from the table games departments. These dealers challenge a common policy and pay practice that impacts all of them in the same or substantially similar manner. While

14

the number of casinos is more, the number of possible discrepancies between the tip pool rules is significantly less. Further, all possible subclasses have written rules, and the Subsidiary Defendants' interrogatory answers indicate that the way in which the subject tip pools function in connection with the PTO policy is quite similar across the different casinos.

Although the FLSA does not require or regulate PTO generally, it does prohibit employers from keeping tips employees receive for *any* purpose. 29 U.S.C. § 203(m)(2)(B). The allegation here is that Defendants kept and used tips to pay for PTO, a benefit they decided to offer employees. Because the FLSA prohibits Defendants from keeping tips for any reason, the alleged use for PTO falls within the statute's parameters.

### 2. *Composition of Collective*

The proposed collective includes "[a]ll persons employed as a table games dealer" during the relevant time period. (Doc. # 133, p. 14). Defendants argue this description is too vague because it is unclear whether the collective includes any person who has worked in the dealer capacity, including dual-rate employees, or only includes persons who have worked exclusively as a dealer. (Doc. # 147, pp. 34-35). Plaintiffs argue that Defendants substantively answered their interrogatory concerning the number of persons employed within the proposed collective without objection, and therefore, the collective is not vague. (Doc. # 152, pp. 24-25). However, the Court had the same question as Defendants upon first seeing the description of the proposed collective. Plaintiffs' intention to include dual-rate employees in the collective only became clear after reading the reply brief. Thus, a more refined description is necessary.

Defendants also argue that the inclusion of dual-rate employees in the collective creates a conflict of interest between members because dual-rate employees benefit from the alleged harm. (Doc. # 147, p. 35). Plaintiffs counter that there is no inherent conflict of interest because dual-

15

rate employees' hourly rate of pay is generally higher for hours worked in a supervisor capacity than hours worked in the dealer capacity plus prorated tips from the tip pool. (Doc. # 152, pp. 25-27). Therefore, Plaintiff argues the dual-rate employees' interests align with those employed in a dealer position. (*Id.*). Plaintiffs illustrate their argument with hypotheticals, using a dealer base hourly rate ($4.25) plus tip rate ($13.00) that totals less than a supervisor rate ($19.00). (*Id.*). Only one of these hypothetical rates is supported by any evidence. (*Id.* at p. 25, n. 22) (citing FAC for dealer base rate and supervisor rate and deposition testimony for tip rate). However, manipulation of those hypothetical numbers could easily result in a supervisor rate less than the combined dealer rate plus tip rate. And hypotheticals are not facts or evidence. The very nature of tips leads to fluctuating rates of pay from pay period to pay period. It is no stretch to imagine that dual-rate employees could sometimes benefit from inclusion in the allegedly illegal tip pool.

Moreover, other courts faced with conditionally certifying proposed collectives that include both tip-eligible positions and positions that rotate between tip-eligible and tip-ineligible have found inclusion of the rotating positions inappropriate because conflicting interests. *See Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 122 (S.D.N.Y. 2014); *Gillian v. Starjem Rest. Corp.*, No. 10 Civ. 6056, 2011 WL 4639842, at *6-7 (S.D.N.Y. Oct. 4, 2011). The *Schear* court ultimately granted conditional certification of a collective without the rotating positions. *Schear*, 297 F.R.D. at 122-23. Although Plaintiffs have not satisfied the burden to show dealers' and dual-rate employees' interests align such that conditional certification of a proposed collective including both is proper, the Court will conditionally certify a collective comprised of persons employed exclusively in a dealer position. The parties shall meet and confer to formulate a definition of the FLSA Unlawful Tip Pool Collective as directed *infra*.

**B. Gaming License Deduction Claims**

The parties have stipulated that Plaintiffs' gaming license deduction claims should be conditionally certified as an FLSA collective action and certified as Rule 23 class actions under Missouri and Iowa law. (Doc. # 133-1). The parties have defined the FLSA Gaming License Deduction Collective as follows:

> All persons employed and paid a direct cash wage of the applicable federal minimum wage or less per hour during the relevant time period at Pinnacle casinos Ameristar Council Bluffs (Iowa), Ameristar East Chicago (Indiana), Ameristar Vicksburg (Mississippi), Boomtown Bossier City (Louisiana), Boomtown New Orleans (Louisiana), L'Auberge Baton Rouge (Louisiana), L'Auberge Lake Charles (Louisiana), and River City (Missouri), and for whom a deduction was taken from their wages for any amount associated with initially obtaining and thereafter renewing a state-issued gaming license.

(Doc. # 133-1, ¶ 1). The parties have further agreed that the relevant time period for the collective is March 31, 2017 to a date to be determined as either (a) the date the Court approves the Notice (assuming no change in pay practices); or (b) such other date as may be agreed to by the parties or ordered by the Court. (*Id.*).

The parties have defined that Rule 23 classes for claims arising under state minimum wage laws as follows:

> **Missouri Minimum Wage Law – Minimum Wage Rule 23 Class (River City):** All persons employed and paid a direct cash wage of the applicable Missouri minimum wage or less per hour during the relevant time period at Pinnacle casino River City, and for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license.
>
> **Iowa Wage Payment Collective Law – Minimum Wage Rule 23 Class (Ameristar Council Bluffs):** All persons employed and paid a direct cash wage of the applicable Iowa minimum wage or less per hour during the relevant time period at Pinnacle casino Ameristar Council Bluffs, and for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license.

(*Id.* at ¶ 2). The relevant time period for these two classes is February 21, 2017 to a date to be

17

determined as either (a) the date the Court approves the Notice (assuming no change in pay practices); or (b) such other date as may be agreed to by the parties or ordered by the Court. (*Id.*).

Lastly, the parties have defined the Iowa Wage Payment Law – Unlawful Deduction Rule 23 Class (Ameristar Council Bluffs) as follows:

> All persons employed during the relevant time period at Pinnacle casino Ameristar Council Bluffs in an hourly, non-exempt position, and for whom a deduction was taken from their wages for any amount associated with initially obtaining or thereafter renewing a state-issued gaming license.

(*Id.* at ¶ 3). The relevant time period for this class is February 21, 2017 to a date to be determined as either (a) the date the Court approves the Notice (assuming no change in pay practices); or (b) such other date as may be agreed to by the parties or ordered by the Court. (*Id.*).

Upon consideration of the parties' stipulation, the prior briefing and Order denying Defendants' motion to dismiss directed at those claims (*see* Docs. ## 58, 70, 73, 100), and applicable law, the Court adopts Plaintiffs' analysis of the suitability of class/collective treatment of the gaming license deduction claims on pages 29-43 of their brief (Doc. # 133) as its own. Plaintiffs have satisfied their burden for conditional certification of the FLSA Gaming License Deduction Collective and for class certification of the Missouri Minimum Wage Law – Minimum Wage Rule 23 Class (River City), Iowa Wage Payment Collective Law – Minimum Wage Rule 23 Class (Ameristar Council Bluffs), and Iowa Wage Payment Law – Unlawful Deduction Rule 23 Class (Ameristar Council Bluffs) for the reasons stated therein.

**C.      Notice**

"[A] district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (quotation omitted). "By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate,

and informative. Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed." *Id.* at 172.

Neither party has submitted a proposed notice, FLSA consent-to-join form, or Rule 23 opt-out form for the Court's consideration. Accordingly, the parties are directed to meet and confer on the proper format and language of these documents as well as a definition of the FLSA Unlawful Tip Pool Collective that is consistent with Section III(A) of this Order. No later than 14 days from the date of this Order, the parties shall submit such agreed forms to the Court for approval. If the parties have failed to reach an agreement within 14 days of the date of this Order, Plaintiffs shall file a motion for approval of their proposed forms within 21 days of the date of this Order, and Defendants shall respond within 14 days. Any reply from Plaintiffs shall be filed within 7 days thereafter.

Plaintiffs request that the Court authorize notice to be sent via email and text message in addition to traditional U.S. mail. (Doc. # 132; Doc. # 152, p. 28). Defendants oppose any form of notice beyond U.S. mail and specifically argue text messages are "invasive and unreliable." (Doc. # 147, pp. 36-37). There is a growing trend allowing notice to be sent electronically. *See, e.g., Krott v. New Directions Behavioral Health, LLC*, No. 4:19-CV-00915-DGK, 2020 WL 5492992, at *4 (W.D. Mo. Sept. 10, 2020) (permitting notice via email); *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) (text and email); *Hancock v. Lario Oil & Gas Co.*, No. 2:19-CV-02140-JAR, 2019 WL 3494263, at *4 (D. Kan. Aug. 1, 2019) (same). However, the Court agrees with other judges in this District that the privacy interests of potential plaintiffs are relevant and that "receiving a text message—which is usually automatic—is more intrusive than receiving an email." *Haworth v. New Prime, Inc.*, No. 6:19-03025-CV-RK, 2020 WL 1899276, at *2 (W.D. Mo. Apr. 16, 2020). Accordingly, the Court will permit notice via U.S. mail and email

19

but prohibit the use of text messaging.

Defendants shall produce the following information for each putative collective member and/or class member, by casino, in a Microsoft Excel spreadsheet or other format mutually agreed-to by the parties within 14 days of the date of this Order: (a) full name; (b) last known address; (c) last known email address; (d) date(s) of employment; (e) employee ID; and (f) position(s).

## **CONCLUSION**

Dealers and dual-rate employees cannot be included in the same collective asserting that Defendants maintained an unlawful tip pool due to conflicting interests. Consequently, the FLSA Unlawful Tip Pool Collective is conditionally certified only to the extent that it includes persons working exclusively as dealers and excludes dual-rate employees. Pursuant to the parties' stipulation, the FLSA Gaming License Deduction Collective is conditionally certified and the Missouri Minimum Wage Law – Minimum Wage Rule 23 Class (River City), Iowa Wage Payment Collective Law – Minimum Wage Rule 23 Class (Ameristar Council Bluffs), and Iowa Wage Payment Law – Unlawful Deduction Rule 23 Class (Ameristar Council Bluffs) are certified. For these reasons and the reasons discussed above, Plaintiffs' Motion is GRANTED in part and DENIED in part. The parties shall follow the Court's directives set forth in Section III(C) of this Order.

**IT IS SO ORDERED.**

s/ Gary A. Fenner
GARY A. FENNER, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 12, 2021

20

Case 4:19-cv-00358-GAF   Document 163   Filed 03/12/21   Page 20 of 20